Education, November 9, 2010, that they were going to check on the availability or the DOE rescheduling the IEPs for the 16th and 17th of November. Until he received the completed IEP later on that evening, he did not know that the DOE had rejected that potential new date for the IEP. So they actually had held the IEP meeting without him knowing that it on the day of the IEP when he called in. What they said in the IEP, and I have it in my brief, is that, you know, are you able to do this by phone? Are you able to do it tomorrow or the next day? And he had a discussion with them, and they said, well, we'll check on the dates that you have asked us to reschedule it on, the 16th and 17th of November, but there's no guarantees, something along those lines. He called up the private school and said, you know, the meeting's been canceled. It was his impression that the meeting was not going to be held. They didn't say affirmatively, we will hold it without you, until after he received the IEP he realized that it had happened. Now I'd like to talk about the district courts finding that the parent rejected the phone conference because he wanted to be physically present. That is not what the transcripts say. The father testified that he was so ill he still could not participate by phone. Now a phone conference is great if your car broke down or you don't have transportation, but if you're ill it doesn't matter if you're in the room or if you're at home. Furthermore, the district court found that there were three reschedulings of the IEP. The Department of Education's witness didn't even say there were three reschedulings. When it happened, the witness said that originally at a team meeting a month before they had scheduled October 28th on the 22nd he called up to talk to the father. The father said, no, I didn't know that was a real date, that's not good for me. They then rescheduled for the first time to November 5th. The father called up the next day and said, no, I mistakenly thought November 5th was available, so they rescheduled it twice. This is all belied by the evidence that there is only one singular conference announcement with regard to this IEP meeting that was dated by the Department of Education October 12th, 2010. The meeting was set and scheduled for November 9th at 1 o'clock. Now, how could the testimony of the DOE's witness be accurate when the DOE witness said he called on the 22nd about an October 28th IEP meeting when on October 12th, 2012 they had already set the November 9th meeting. That testimony cannot be true. It's clearly an error. So, let me ask you this. The ALJ made a great deal of the fact that an IEP was, the annual review was due November, what was the date, 13th? November 13th, your honor. And that they had tried to accommodate Doug C's father. Right. Best they could in order to meet that deadline. Right. So, there's two problems there. One is... Hold on, hold on. So, the other thing that comes out in that testimony is that it can't go beyond that date because services would lapse. Right. So, is there any legal authority for that statement that services would lapse if they didn't complete the IEP by the annual review? Well, that was a fictitious deadline because the annual review, the law, the only law on the books here says that an IEP must be held not less than annually. There was an IEP meeting, the Department of Education stipulated to the last IEP meeting was on April 19th, 2010. So, that was not an annual deadline. That was an anniversary date for the IEP. They had set, that was one year after the last annual IEP, what they call annual IEP, but it's a misnomer. It's an anniversary IEP. Every year they hold one IEP that they go through everything and develop it afresh. What happens if they miss pay a week? We have that in AR here. The Department of Education had not held an IEP meeting before the beginning of the school year, which an IEP has to be in place at the beginning of every school year, and it was a week or two or three delayed in the court. Judge Mulway in AR found that that was a de minimis kind of mistake and it didn't really deny anybody anything. What could have happened? There's a lot of things that the DOE could have chosen to do. They could have said, okay, we'll extend. You now, under the authority of the Individuals with Disabilities Education Act, can do an IEP in writing where you can just change one minor thing and you don't have to hold an IEP meeting. They could have extended this IEP, said, father, will you agree to a one month extension to the IEP deadline? We'll just reissue this IEP as it is for another month. They could have done that over the phone. Or, when they held the December 7th the IEP they had already developed, line by line, they could have said, we're going to put this aside and we're going to start fresh here. We're going to go through the whole thing as if we never did this. That way they would have had the protection that they sought and they would have been able to have afforded the parent the opportunity that the law requires. Before they actually held the meeting, did they give him notice that they were planning that their recommendation was going to be moving from the private school back to the public school? Not at all. Was he aware that that was contemplated? He was always hyper-vigilant about that question, that they might attempt to do that at any time. He was aware in that sense that he was afraid of it. He was also afraid that if they had done that, and it is obvious, I'll save that for the end, but he was aware that that could at any time happen. Well, if you're saving it for the end, this is a good time. You're running out of time. Two and a half minutes left. Thank you. Save them for rebuttal. The distinction between this case and Shapiro is only in that in Shapiro, the DOE held the IEP meeting because they didn't want to reschedule it because it was inconvenient, I think. In this case, they held the IEP meeting because they thought that this deadline was approaching, and if they blew the deadline, that that would be a denial of faith. But they also said that other members of the team that made commitments had traveled commitments. Right. And that they didn't want to disturb. Because even under their scenario, there was a couple of days, I think it was a Thursday and a Friday, where they could have held the IEP, but those days apparently would have interfered with the travel. Well, there was a Friday that would have interfered with the travel, and they'd be gone for a week, then they'd be back. So they could have waited, or they asked the parent, are you going to hold it one or two days, and he said, I can't say for sure that I'll be recovered. And so they said, well, then forget it, we're not going to reschedule it. But there were, but I think the main factor, if you see in the transcripts, is that they just didn't want to blow the anniversary date, which wouldn't have violated faith, it would have been a procedural violation that wouldn't have denied the parent a participation or lost the child's opportunity. I'll reserve my, where's my hand? Save your minute. I'll save my minute, thank you. Good morning. I place the court, Michelle Pukui, Deputy Attorney General, representing the Department of Education, State of Hawaii. To address Mr. Peck's claim, basically he's raising a bunch of ideas that the DOE should have pursued in lieu of having this meeting without the parents' presence. Those are nice ideas, but they're all contrary to law. The annual revision date, the annual deadline, is not a phantom date that the DOE invented. That comes from the Code of Federal Regulations, wherein the department is required to revise and review the student's annual IEP no less than annually. There's nothing in the law that would have allowed the DOE the flexibility that Mr. Peck is trying to convince this court that it should have taken advantage of. But it's his right to enforce the procedure. That's correct, but the DOE... Right, so if he waives his right, he could go forward. There's no evidence that that would have been proper. Basically the way the procedural violation analysis works is one of the... Right, I understand that, but it's his son's right to a free and appropriate education. It's a procedural violation if you miss the annual meeting. That's a, a person can waive your procedural rights. And so what you're basically saying is we can violate his procedural right to be there because there's this other procedural right which we think he might have asserted to claim that there was not a free and appropriate education offered. Actually what the parent has the right to procedurally under the IDEA is meaningful opportunity to participate, and that was afforded to the parent in this case. Just because he wasn't there doesn't mean there was a procedural violation committed. I think you're providing a different answer to the question that I posed. The question is, didn't the parent have the right to waive his procedural rights to have an annual review? There's no support in that in the law. You don't think that? The parent has the opportunity to waive a procedure requirement that the DOE is required to adhere to. So let's get back to the dates. There was a, an allegation that the annual date was actually in April rather than November. That's inaccurate. Well, you know, it was raised and never ruled on by the district court as far as I can see. It's inaccurate because the revision date, meaning the annual date, had never changed from the previous IEP. It always remained in November. So the IEP, what happened on the IEP meeting on April 19th, 2010? There was a student support meeting held in April 19th of that same year. See, in this case, this student actually received 365 days a year of services. That required the department to meet regularly to discuss the student. However, that did not amount to an actual annual IEP, which is actually set and is clear as stone on top of the IEP itself when that deadline is. So it wasn't a matter of we revised the IEP several times a year so we changed the annual revision date. The annual due date does not change. It cannot be changed unless the IEP meeting or any meeting that is convened between the parties actually is designated as such as an annual review meeting. This was, the April meeting was never designated as such. Well, you know, they raised that issue in their brief. I didn't see the district court ever made a finding on that. There was also never any finding of that in the record. So. That was never raised at the administrative hearing. It was never raised at the administrative hearing that the April meeting constituted. They weren't at the administrative hearing, were they? I'm sorry? They weren't at the administrative hearing. No, they were at the administrative hearing. I mean, afterwards. My point is in the administrative hearing in the original record wherein what we're looking at was created, that was never raised by the petitioner that the annual date was something other than the November 13, 2010 deadline. So how do you distinguish Shapiro? I distinguish Shapiro because basically what happened in Shapiro was the school said we got people who were coming up on the end of the school year. People are going on vacation. People got stuff scheduled. And just because the date we're offering is not going to work for the parent, too bad. We're not moving it. This is entirely different. It's not. This meeting was scheduled. This was the third time this meeting had been rescheduled. It had been scheduled on October 28th. It had been rescheduled to November 4th and then ultimately rescheduled thereafter to November 9th. Each time it was scheduled and moved, it was at the parent's request. And in fact, the DOE was entertaining the idea of rescheduling the meeting a fourth time at the parent's request to the following date, November 10th, or the following date either after November 11th, but the parent would not commit to either date. Because he was sick. That's... Why are you shaking your head? I mean, there's no dispute in the record that he was sick, is there? I think it was made very clear to the parent also that this meeting had to occur within the annual deadline, which was set to expire that Saturday. The parent was also given alternate means of participation is also allowable by law. He decided to reject all of those alternatives. This is combined with the evidence that the fact that the parent was on the phone with the DOE discussing moving this meeting for 40 minutes. Suppose the meeting hadn't taken place by that Saturday. What would have happened to the services provided to this child? They would lapse. I mean, so on Monday, when the kid shows up to school, gets nothing. Actually in this student's case, on Sunday, the services would cease. Okay, no services are provided. Correct. Because the annual IAP wasn't held. That's my understanding. Okay, what statute or regulation supports what you just said, on which you base your understanding? There's nothing that authorizes continuation of the services because the services are already set to expire. Because there's nothing there that authorizes it, therefore, on Sunday, he gets nothing. I suppose so. I believe what... In other words, do you think the school would have violated the law by not continuing the services? I'm not sure what the school would have done in that circumstance. No, I'm just saying, you seem to be saying the school would have violated the law if it had continued the services on Monday morning. That's surely not the case. I believe in looking at the IAP... Do you think the DOE would have come down with a bunch of, you know, education police and say, no, you can't provide those services? I doubt it. Yeah, so that's... I doubt it, but there is also a procedural argument that can be made that the student was denied educational benefit, which is the second prong of the procedural violation analysis, which Mr. Peck decides he'd rather ignore than address, and simply focus on the parent's meaningful opportunity to participate, which the parent was greatly afforded in this case. That's the clear distinction between Shapiro. It's the clear distinction between that and Amanda Jay, and also in all of the other cases cited to by Mr. Peck. They're all distinguishable, because in this case, the DOE bent over backwards to accommodate this parent within the parameters that it has to deal with. Okay, now you said earlier that there was no authority for waiver? Not that I'm aware of, nor did the petitioner cite to any. Well, I'm looking at James N. v. Hawaii, which is a Hawaii District Court case. Yes, it is. And wasn't there a waiver involved in that case? As far as the annual deadline? Yes. I'm not aware of that. What is clear in the law that the DOE was trying to adhere to, is that they're required to afford the parent a meaningful opportunity to participate in the annual, which is what they offer. They can't do any more than that. Okay. In looking at the other argument that Mr. Peck cited to at the outset of his argument, that the parent was unaware that the DOE was going to convene this meeting in his absence, there's no support in the record for that assertion. Mr. Peck cites the three different areas in the record, claiming that that assertion was made clear, and it wasn't. If you look at the areas that he cited to in his reply brief, one is wherein the DOE sent the IEP and the prior written notice to the parent following the meeting, after it had already occurred. And actually, the last two citations refer to parts of the transcript, which also don't support the assertion that Mr. Peck has raised, that the parent was unaware that this meeting was going to occur as scheduled on November 9th. Let me, you know, you just said a moment ago that the department, or the school, whatever, afforded him every opportunity to attend. Words to that effect. Is that right? Yes. So, is it clear that he understood that the IEP meeting was going to take place that day? Yes, and there's no evidence to contradict that assertion either. My question was, was he told he won't show up or go on forward with the meeting? He was told that the meeting is going to be held, and in order to address any concerns he might have about the IEP that resulted from the meeting that was set to occur, that they would hold a revision meeting at his convenience. That conversation with regard to setting a revision meeting following the annual meeting had already commenced discussions before the November 9th meeting. The federal regulations talk about a meeting may be conducted without a parent being present at an IEP. That's correct. If the agency is unable to convince the parent to be present. That's correct. All right. They also have to make... So here, did you say, did you tell, I mean, was there any evidence that they said, look, we're going for, we've been in these attempts to schedule a meeting, we understand you're you know, we're going to hold this meeting today, and you better be there, or else. Actually the student service coordinator spoke to the parent several different times the morning before the IEP meeting occurred. He actually opined that the conversations, when taken together, estimated approximately 40 minutes of time, which is why he was confused by the parent's assertion that he could not participate by any other alternate means. That was quite a sum of time. The meeting itself spanned two and a half hours. It's unclear from the evidence whether or not the parent could have meaningfully participated by alternate means. Did they alert the parent that they were about to change the child's placement? I believe he was probably aware of that. Probably. On what basis do you make that? On the basis that the DOE had been made aware that services were not being instituted to the child at his private school placement, and the DOE was very concerned about that. The DOE had even proposed providing the services to the student at the private placement to ensure that the services were carried out. They were not being provided materials from the private placement. They were not being allowed meaningful opportunity to get any information on the student at the private placement in question. So I'm sure the parent was alerted that the DOE was considering moving placement. In addition to that, the student had been actually attending the DOE school for the after-school program. So it's not like he was not familiar with the school. This was some new move. The DOE made a difference. They had said, look, we're contemplating recommending significant changes to your son's services moving him from the private school, Horizons, to Maui, and it would be in your best interest, no matter how you're feeling, to be present at this meeting. Actually... Do you think that might have made a difference? I'm sorry, actually, according to the law, that's something that the DOE cannot tell the parent. Can't tell the parent anything? You can't tell the parent what options you're... You're saying we're going to discuss your child's placement? Discussing placement is always something that happens at an IEP meeting. You can't say anything. You've just got to say, you've got to be there. You can't tell the parent that we're contemplating moving the kid to the DOE school at this IEP meeting. You can't tell them that ahead of time. What happens is you have to design... So they're supposed to go to the IEP meeting and have a discussion, and then through that discussion, you come to a conclusion that he'd be better off at the home school. Correct. And that discussion did occur at the November 9th meeting. And actually, at the subsequent meeting on December 7th, wherein the parent was given an ample opportunity to actually speak his piece on the idea of the move, if that was the issue, he said nothing. He sat there and stubbornly said, I wasn't at the annual, so I reject the IEP in its entirety. And actually, this court has already indicated that that's exactly the stance that is not going to view favorably. That's what this court opined in Ms. S., when Ms. S. did the same thing. Basically, what she decided in that meeting was that because... No, I'm sorry. It wasn't Ms. S. It was Rachel L. I'm sorry. That's actually a USDC opinion in Hawaii, wherein the court decided that because the parent was trying to reschedule a meeting away from where it was existingly scheduled, but the parent didn't demonstrate any good faith efforts to try and move the date with the DOE. He just said, you know what, that date's not going to work, and didn't raise any alternate dates. And basically, in that case as well, the DOE offered both parents in that case a subsequent meeting to address that issue, and the court did not look favorably upon the fact that the parent elected to not so participate in any follow-up meeting or any follow-up discussions, and that's exactly what happened here in this case. Okay. Thank you. I think what we're presented here with is a clear area of law where the Department of Education is required by federal law to revise and review the student's IEP meeting no less than annually. What the law also allows is for revision meetings to occur to address any issues that might arise, either from the parent, from the department, from a private placement, if that's where the kid is at. But additionally, it also allows for these meetings to occur without the parent giving certain parameters. And what is required is an allowance to meaningfully participate. It doesn't require the parent have to be at the meeting. The law doesn't say that. The law says give them every meaningful opportunity to participate in the process, and that's the best you can do, and that's all that the law requires the department to do. Your Honors, the Student Services Coordinator had told the parent he would check on the dates that the parent proposed, November 16th and 17th. If he was going to check, did he already tell the parent, absolutely, we're going to hold it without you? The two are not possible in the same sentiment, right? Also, I would like to say that Ms. Putlu keeps on saying that they rescheduled three times. Even if it were to be true, what she's saying, it's only two reschedulings. She keeps on saying three reschedulings. The child was in a private placement. When the DOE refused to pay for the stay put during the pendency of this case, the private placement continued to provide services because the parent had to pay and assume the costs. So the services would not have ended because the parent had placed the child there originally. Ms. Putlu told the court that the April 19th, 2010 meeting was a student services team meeting. That's untrue. In the record, we cite to when Ms. Putlu responded to the court in a motion for stay put saying that that, and it's in the record, it was an IEP meeting and it's certainly less than a year past prior to this November 9th IEP date. Lastly, I'd like to make the court aware that there's been a subsequent due process hearing request which Doug C. has prevailed on and Ms. Putlu has challenged in the district court. So if this court does remand the case, the Department of Education has accepted their responsibility to pay for stay put costs during the pendency of the new appeal and therefore the costs will be covered. The period in time that we would seek reimbursement for is from the date of the- That would all have to go back. If we were to rule in your favor, that all has to go back to the district court, correct? Yes. Well, it would have to go back, I think, to the administrative court. Because it's never resolved, that part of the claim. Right, Your Honor. So I would say that it's impossible that the SSC had told Mr. Clark we're going to go ahead no matter what if he was also, he admitted in the record and we cited to it, that he was going to check on the availability of the DOE for those subsequent dates. I've never attended an IEP, but is it correct the way she described it? That's to meet and you're supposed to discuss everything and then through that process come to some sort of, you know, determination about what's in the best interest of the child for his educational services? In theory, Your Honor, that's true. But in practice what happens is the DOE writes a draft IEP out. That's what I thought. And they can say, well, we're assuming that the least restrictive environment is going to be the homeschool. This is what we're looking to do. We haven't made our decision. We haven't made up our mind yet because that's predetermination. You can't do it. But you can allude to that's one of the things we're going to be addressing at this meeting, certainly. Thank you, Your Honor. Thank you, Mr. Johnson. Thank you both. The case to just argue will be submitted. There are no more cases for oral argument, so the court will stand in recess for the day.
judges: Reinhardt, Thomas, Paez